**INDIAN RIVER RECOVERY CO., Plaintiff,**

v.

**THE CHINA, Her Appurtenances, Furniture, Cargo, etc., Defendant,**

v.

**OCEAN WATCH, Applicant for Intervention.**

Civ. A. No. 85–315 CMW.

United States District Court, D. Delaware.

Dec. 3, 1985.

Bayard J. Snyder, of Phillips and Snyder, Wilmington, Del., for plaintiff.

Patrick Scanlon, of Barros, McNamara & Scanlon, Dover, Del., for proposed intervenor.

William C. Smith, Sp. Counsel, The Atlantic Alliance for Maritime Heritage Conservation, Washington, D.C. amicus curiae.

OPINION

CALEB M. WRIGHT, Senior District Judge.

FACTS

In 1970, while conducting wire-dragging navigational obstruction surveys of the shipping lanes at the mouth of the Delaware Bay, National Oceanic and Atmospheric Administration (NOAA) vessels snagged an obstruction at 38°49'14" North latitude, 74°55'00" West longitude. This location is approximately eleven miles east of Cape Henlopen, Delaware and seven and one-half miles south of Cape May, New Jersey, in the federally-administered waters known as the contiguous zone.

The obstruction turned out to be the wreck of a heretofore undiscovered merchantman whose cargo of nineteenth century English ironstone china lay strewn across the floor of Delaware Bay, forty feet below the water's surface.

The discovery of the shipwreck was well documented in the local press and in sport scuba diving magazines. Sport scuba divers began to dive the wreck, the identity of which remains unknown but which, due to its cargo, became known popularly as the CHINA WRECK. The vessel, overgrown with coral and sheltering thousands of baitfish, gamefish and shellfish, and one of the only significant obstructions on an otherwise barren, sandy seafloor, became a favorite site for fishermen.

In the fifteen years since its discovery, commercial dive boat operators and charter fishing boat captains regularly visited the wreck. Many sport scuba divers have made the fairly shallow (40′) CHINA WRECK dive and, using knives and simple hand tools, have recovered individual pieces of the vessel's contents while leaving the structural integrity of the wreck intact.

On May 29, 1985, plaintiff Indian River Recovery Co., filed a complaint before this Court praying that process issue *in rem* against the vessel THE CHINA, its appurtenances, furniture, cargo and apparel. The complaint also asked that process issue *in personam* against any persons identified as potentially having an interest in the premises, that any such persons appear before the Court and that they state their interest in THE CHINA. Plaintiff also asked that the Court grant it a salvage award for its having located the abandoned wreck THE CHINA and its salvage services upon the vessel.

That same day, the Court ordered that a warrant issue for the arrest of THE CHINA, her appurtenances, her furniture, her cargo and her apparel.[1]

On June 19, 1985, the State of Delaware moved to intervene in the action on grounds that the state owns the submerged lands upon which the shipwreck is embedded and as such has an interest in the vessel. The State withdrew its motion to intervene by letter of July 22, 1985, apparently after realizing that the wreck lay outside its territory.

On June 24, 1985, Ocean Watch, an unincorporated non-profit organization composed of dive boat operators, dive shops, scuba diving clubs and individuals for the purpose of promoting the sport of scuba diving, moved to intervene in the action. The organization was formed after one of its New Jersey members discovered the arrest papers attached by buoy to the wreck.

On July 5, 1985, Ocean Watch and Indian River Recovery Co., appearing before Chief District Judge Murray Schwartz, agreed to a Consent Order which temporarily enjoined all diving and salvage activities on the CHINA WRECK.

Ocean Watch bases its motion to intervene on a claim of a prior and superior interest in the wreck. This asserted interest arises from its members' assignment of salvage rights to it,[2] and on behalf of its members' interests, both business and recreational, in keeping the CHINA WRECK available for sport diving and fishing purposes. Plaintiff Indian River Recovery Co. opposes the motion on grounds that Ocean Watch has no basis to intervene under Fed.R.Civ.P. 24. Plaintiff contends in particular that Ocean Watch has no basis to intervene as of right under Rule 24(a)(2) because it has no interest relating to the wreck to protect.

## DISCUSSION

■ Intervention in *in rem* admiralty proceedings has a long history. It is essential to protect the rights of third parties, because a judgment *in rem* binds not only the parties before the court but gives title "good against the world" *The Trenton,* 4 F. 657 (E.D.Mich.1880), *The Mary Anne,* 16 F.Cas. 953 (C.C.D.Me.1826) (No. 9,195), *See* G. Gilmore & C. Black, *The Law of Admiralty,* 786–90 (2d ed. 1975) (hereinafter Gilmore & Black), 3B Moore's Federal Practice ¶ 24.03 (2d ed. 1985). As a general principle, all persons having an interest in the *res* can "intervene *pro interesse suo,* file their claims and make themselves parties to the cause, to defend their own interest." *The Mary Anne,* 16 F.Cas. 953 (C.C. D.Me.1826) (No. 9,195). Federal Admiralty Rules 34 and 42 stated this historic admiralty practice, and allowed intervention when jurisdiction was *in rem.* Although Fed.R.Civ.P. 24 supplanted these Admiralty

---

**1.** The affidavit of service upon the wreck indicates that process was served upon the same wreck discovered by the NOAA vessels in 1970, hereinafter referred to as the CHINA WRECK.

**2.** Ocean Watch's motion and supporting affidavits indicate that its members have been diving the CHINA WRECK and recovering artifacts from it during the past fifteen years.

Rules in 1966, the rationale underlying intervention in *in rem* proceedings remains intact.

■ Ocean Watch primarily bases its motion to intervene in both the in rem and in personam proceedings on Fed.R.Civ.P. 24(a)(2), which allows intervention as of right upon timely application

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Under Rule 24(a)(2), an application for intervention as of right must (i) be timely, (ii) show an interest in the subject matter of the action, (iii) show that the protection of the interest may be impaired by the disposition of the action, and (iv) show that the interest is not adequately represented by an existing party. *See Paine Webber v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 564 F.Supp. 1358, 1370 (D.Del.1983); *Jet Traders Investment Corp. v. Tekair, Ltd.*, 89 F.R.D. 560, 568 (D.Del.1981); 3B *Moore's Federal Practice* ¶ 24.07 (2d ed. 1985).

There is no doubt that Ocean Watch's application to intervene meets the timeliness requirement of Rule 24(a)(2). Ocean Watch filed its motion to intervene less than one month after Plaintiff filed its complaint. During this period, a sport diver discovered the notice of arrest attached to the CHINA WRECK by buoy, word of the seizure spread among the Delaware, Pennsylvania and New Jersey sport diving and fishing communities, the organization Ocean Watch was formed, Ocean Watch retained counsel, and counsel prepared and filed motions and briefs for intervention and injunctive relief. The Court doubts that Ocean Watch could have filed its application for intervention much sooner.

Ocean Watch's application also easily meets the fourth requirement of Rule 24(a)(2): that the interest asserted not be adequately represented by an existing par-

ty. Plaintiff's interests in the CHINA WRECK are adverse to those claimed by Ocean Watch. Plaintiff could not adequately represent Ocean Watch's competing interests.

A more difficult issue is whether Ocean Watch has met the second requirement of Rule 24(a)(2), which requires it to have asserted "some significant, legally protectable interest which relates to the transaction or the property which forms the subject matter of the main action." *Jet Traders Investment Corp. v. Tekair, Ltd.*, 89 F.R.D. at 568. Plaintiff contends that Ocean Watch has no interest in the CHINA WRECK, and thus has not met the interest requirement.

As Judge Schwartz recently stated:

> The concept of a legally protectible interest sufficient to sustain intervention as of right is amorphous. Readily apparent in factual contests where the disputed interest is a claim to a property interest, it eludes judicial definition in a more subtle factual matrix. One commentator has suggested it embraces aspects of standing. 3B Moore's, *Federal Practice* [¶] 24.07[2]. (2d ed. 1985). Another commentator has suggested not tarrying over the concept, but looking instead to whether the asserted interest would be impaired by disposition of the litigation. *See* 7A Wright & Miller § 1908. The Supreme Court has instructed that there need not be a direct interest in the property or transaction at issue provided that the [asserted] interest would be impaired by the outcome. *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 135–36 [87 S.Ct. 932, 936–37, 17 L.Ed.2d 814] (1967).

*Coca-Cola Bottling Co. v. Coca-Cola Co.*, 98 F.R.D. 254, 281–82, n. 68 (D.Del.1983).

■ An intervenor need not have standing necessary to have initiated the lawsuit. *United States v. Imperial Irrigation District*, 559 F.2d 509 (9th Cir.1977), *reversed and vacated on other grounds*, 447 U.S. 352, 100 S.Ct. 2232, 65 L.Ed.2d 184 (1980). *See* 3B Moore's, *Federal Practice* ¶ 24.-

07[2] (2d ed. 1985). It follows that, if an applicant for intervention would have had standing to bring the action originally, it has satisfied the interest requirement of Rule 24(a)(2).

■ In order to have standing, a party seeking to invoke the court's jurisdiction must have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues" *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). "[T]his requirement of a 'personal stake' has come to be understood to require not only a 'distinct and palpable injury' [to the party,] but also a 'fairly traceable' causal connection between the claimed injury and the challenged conduct." *Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1977), *citing Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977); *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1925–26, 48 L.Ed.2d 450 (1976); *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973).

In *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), the Supreme Court held that an organization with a "special interest" in a controversy does not have standing to sue on its own behalf for that reason alone. The Court noted, however, that an organization could litigate on behalf of its members who are injured. *Id.* at 739, 92 S.Ct. at 1368, *citing NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

The Supreme Court established three prerequisites for organizational standing in *Hunt v. Washington State Apple Advertising Comm'n.*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Ocean Watch bases its Motion to Intervene on (i) a prior, competing interest in the wreck arising from its members' fifteen years of continual diving activities at the site, (ii) its prior salvage efforts, under which it claims a competing salvage right that would exclude plaintiff from commercially salvaging the site, and (iii) an interest in preserving the CHINA WRECK for the public access of both sport divers and fishermen. An analysis of these three bases for intervention in light of the requirements for organizational standing reveals that, had Ocean Watch originally brought the action, it would have had standing based on at least two of the interests it asserts.

Ocean Watch claims a prior competing interest resulting from its members' fifteen years of continual diving. This asserted interest combines two distinct interests held by its individual members: (1) the recreational, aesthetic and environmental interests of Ocean Watch's individual sport scuba diving members, and (2) the commercial interests of dive boat and fishing boat captains, who stand to lose income if sport divers no longer could visit the wreck or if plaintiff's commercial salvage operations destroy the wreck so that it no longer provides a habitat for fish.

■ Injury to recreational, aesthetic and environmental interests is, for purposes of standing, "injury in fact." *See Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. at 73–74, 98 S.Ct. at 2630–31; *United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Delaware v. Pennsylvania-New York Cent. Transp. Co.*, 323 F.Supp. 487, 492 (D.Del. 1971). *Cf. Sierra Club v. Morton*, 405 U.S. at 734, 92 S.Ct. at 1365. Ocean Watch asserts that if Plaintiff is allowed to salvage the CHINA WRECK commercially, its sport-diving members will lose the

wreck's aesthetic value as well as the opportunity for continued recreational salvage diving that they have enjoyed for up to fifteen years. This interest suffices for Ocean Watch's individual, sport-diving members originally to have had standing in this action.

■ Ocean Watch's commercial dive boat and fishing boat captain members have sufficient individual and representative interests so that they too would have standing to sue in their own name. "[V]endors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function" *Craig v. Boren* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), *citing Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), *Sullivan v. Little Hunting Park*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), *Barrows v. Jackson*, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953). The award of salvage rights to the plaintiff and the concomitant possibility of the CHINA WRECK's destruction not only would result in a loss of income to these commercial boat operators, but would prevent their customers from utilizing their services to dive and fish the wreck.

Plaintiff contends that this Court's decision in *Paine, Webber, Jackson & Curtis, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.* 564 F.Supp. 1358 (D.Del.1983) precludes Ocean Watch from claiming its members' loss of business as an interest under Rule 24(a)(2). In *Paine Webber*, however, the intervenor had not claimed any "right, title or interest" in the patent that was the subject matter of the litigation. He claimed only that he would suffer a potential loss of customers to the defendant, who was offering better services. The Court found this potential loss of customers too speculative to meet the interest requirement of Fed.R.Civ.P. 24(a)(2).

Unlike the proposed intervenor in *Paine Webber*, Ocean Watch asserts a definite interest in the subject matter of the action, the CHINA WRECK. No speculation re-

mains as to a loss of business if Plaintiff is awarded exclusive salvage rights. Such an award necessarily would preclude Ocean Watch's commercial dive-boat-captain members from earning income by taking divers to the wreck.

■ The interests asserted by Ocean Watch thus satisfy traditional standing requirements so that it initially could have brought the action, and so satisfy the interest requirement of Rule 24(a)(2).

Finally, Rule 24(a)(2) requires a showing that the protection of the interest may be impaired by the disposition of the action. A denial of Ocean Watch's motion would result in an impairment of the interests it asserts in the CHINA WRECK. Plaintiff presently is the only party to the action. It seeks an exclusive right to dive on the wreck and salvage objects from it, which, if granted, would put an end to Ocean Watch's members sport diving activities. Ocean Watch's commercial dive boat operators similarly no longer could earn income from taking divers to the wreck. If plaintiff conducts commercial salvage operations on the wreck so that it no longer provides a habitat for fish, Ocean Watch's members would lose a valuable recreational and commercial fishing site.

Ocean Watch also claims competing salvage rights to the CHINA WRECK. Its interest in these rights would be impaired if it could not intervene and the Court granted plaintiff's claim for a salvage award.

The Court thus finds that Ocean Watch has met the requirements for intervention as of right under Fed.R.Civ.P. 24(a)(2). An order will enter in accordance with this opinion.